TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00249-CV






John D. Kalmbach and wife, Frances M. Kalmbach, Appellants



v.



Seminole Pipeline Company, Appellee






FROM THE DISTRICT COURT OF LEE COUNTY, 335TH JUDICIAL DISTRICT


NO. 9979, HONORABLE NORMAN LANFORD, JUDGE PRESIDING 







 This appeal concerns a pipeline condemnation suit. Appellee Seminole Pipeline Company
("Seminole") sought to acquire the right to lay an additional high-pressure natural gas pipeline in a non-exclusive, single line easement which it had previously established over land owned by appellants John and
Frances Kalmbach ("the Kalmbachs"). The parties were unable to reach an agreement on just
compensation and the issue of damages was tried before a jury. On Seminole's motion, the jury verdict was
modified and the trial court rendered judgment non obstante veredicto ("judgment n.o.v."). It is from this
judgment n.o.v. that the Kalmbachs appeal. Concluding that reversal is warranted by the Kalmbachs' first
point of error, we reverse the judgment n.o.v of the trial court and reinstate the jury verdict. 


BACKGROUND

 Seminole owns and operates two common-carrier natural gas liquid pipelines in Texas,
running from Gaines to Mont Belvieu. The first pipeline was constructed in 1981; the second pipeline
constructed in 1992 is the subject of this litigation. The scope of Seminole's 1992 project extended from
Gaines near the border of New Mexico to Mont Belvieu near the Gulf Coast, and required the acquisition
of over 500 miles of right-of-way easements from landowners across Texas.

 The Kalmbachs own 150 acres of farm and pasture land in Lee County, Texas. On March
7, 1981, the Kalmbachs conveyed a fifty-foot wide easement to Seminole for the operation of a single
pipeline. The easement traversed the tract southeasterly a distance of 110.48 rods or 1822.92 feet (one
rod equals 16.5 feet). A portion of the acreage was situated to the northeast of the easement, and the
remainder was situated to the southwest. In connection with the easement, there were no fences or above-ground appurtenances interfering with the Kalmbachs' farming and ranching operations on the entire 150-acre tract. 

 Seminole determined a necessity for a second pipeline from Gaines to Mont Belvieu to be
situated wholly within the existing easement, parallel and immediately adjacent to its first pipeline. In 1992,
Seminole attempted to acquire the rights to operate the second pipeline through negotiations with the
Kalmbachs. Negotiations were unsuccessful and on November 17, 1992, following statutory
condemnation procedures, Seminole exercised its eminent domain authority in taking the easement. 

 Pursuant to the Texas Property Code, special commissioners were appointed to assess the
Kalmbachs' damages as a result of the taking. Seminole's expert, Larry Kokel appraised the Kalmbachs'
total damages at $3820. The special commissioners assessed total damages in the amount of $7524, and
the Kalmbachs appealed to the district court.

 At trial, the Kalmbachs claimed damages of $504,168. Their expert, George Reed,
assessed damages of $447,444. Reed's appraisal excluded additional construction and trespass damages
claimed by appellants. By its answers to the special issues submitted, the jury found that the decrease in
the market value of the permanent easement, immediately before and immediately after the taking was
$66,288; that the decrease in the market value of the temporary construction easement immediately before
and immediately after the taking was $650; that the market value of the remainder immediately before and
immediately after the acquisition of the permanent easement and the temporary construction easement was
$7306; and that the amount of construction damages was $5678. Seminole moved for judgment n.o.v.
with regard to three issues; however the trial court sustained the motion only as to the $66,288 decrease
in market value of the permanent easement finding the evidence insufficient to support this award. 

 In granting Seminole's motion, the trial court modified the jury's verdict of $66,288 in
response to Special Issue Number 1 and substituted Kokel's appraisal of $1170 as the decrease in value
of the permanent easement immediately before and immediately after the taking. Judgment was entered
accordingly and it is from this judgment that the Kalmbachs appeal. There is no question raised as to the
right of Seminole to take the property or as to the procedure followed. The only question before us
concerns the market value of the property taken by condemnation. The Kalmbachs, the plaintiffs below,
predicate this appeal on two points of error and challenge the judgment of the trial court by asserting that
the court erred in (1) entering judgment n.o.v. because there was sufficient evidence of probative force to
support the jury's findings on all special issues; and (2) excluding the comparable sales testimony of
appellants' expert regarding sales of easement rights in established pipeline corridors. 


STANDARD OF REVIEW

 Texas Rule of Civil Procedure 301 provides for a judgment n.o.v. in such instances where
a directed verdict would have been proper. We will uphold a trial court's judgment n.o.v. only if there is
no evidence to support the jury's verdict. Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 227 (Tex.
1990); Fisher v. Evans, 853 S.W.2d 839, 841 (Tex. App.--Waco 1993, writ denied). If more than a
scintilla of evidence exists supporting the jury's verdict, we will reverse a judgment n.o.v. Mancorp, 802
S.W.2d at 228. In determining whether more than a scintilla exists, we review only the evidence supporting
the jury's verdict and disregard all evidence and inferences to the contrary. Id. at 227. Thus we must
consider the evidence and inferences as they tend to support the verdict and not with a view toward
supporting the judgment. Id. at 228. More than a scintilla of evidence exists if the record reveals some
probative evidence to support the verdict, "no matter how small." Ellis County State Bank v. Keever,
888 S.W.2d 790, 801 (Tex. 1994) (emphasis added). 


DISCUSSION

 We first address the Kalmbachs' challenge to the judgment n.o.v. based on the sufficiency
of the evidence to support the jury's verdict. The Kalmbachs assert that the record contains ample
evidence of probative force to support the jury's findings on all special issues. Seminole challenged the
jury's findings in a motion requesting that the trial court render judgment n.o.v. and disregard findings on
special issues one, three, and four. Although Seminole's motion contained thirty-two numbered
paragraphs, it asserts the single ground that there was no evidence, or insufficient evidence, to support the
jury's findings on each of the issues presented. Because the trial court only sustained the motion with
regard to issue number one, we shall limit our review to consideration of the facts regarding that issue. 

 The November 15, 1995 order of the trial court granted the motion with regard to Special
Issue Number 1 which provided the following:

The questions submitted to you to be determined by you from the evidence and answered
by you are as follows:


1. Find from a preponderance of the evidence the decrease in the market value of the
Permanent Easement on November 17, 1992, immediately before and immediately
after its acquisition.



The jury found as its verdict $66,288. However, pursuant to the motion for judgment n.o.v., the court
modified the jury award on this issue to $1170.

 At the heart of Seminole's complaint was the testimony provided by appellants' expert,
Reed, who testified that the highest and best use of the easement area was for pipelines. He further testified
that a segment of space five feet wide and sixteen and one-half feet long is a standard increment within
established pipeline corridors and that the standard price for that increment is $450. Appellants offered into
evidence twelve conveyances of pipeline easements. However, the trial court excluded ten of the sales for
various reasons. Reed's appraisal was based on the market value of pipeline easements, using the two
comparable sales that were admitted into evidence. Those sales were of properties similar to the property
at issue and were made to non-condemning authorities. The first sale reflected consideration of $316 per
rod for a fifteen-foot wide permanent easement and the second reflected consideration of $725 per rod
for a ten-foot- wide permanent easement. 

 Reed also testified that the 1981 and 1992 pipelines were designed to and did meander
within the easement of the subject property in a serpentine manner, and that the meandering of the 1992
line encroached upon and eliminated four of the available five-foot lanes. He deduced that because a
straight line is the cheapest way to lay the lines, Seminole had purposefully serpentined the easement. On
direct examination Reed testified that the value of the taking was $49,716 and that the seven five-foot, the
one three-foot, and the one two-foot strips available on the property had a value of $397,728 before the
taking. Reed concluded that the total amount of damages resulting from the value of the taking, taken
together with the diminution in value of the remainder was $447,444. On cross-examination, Reed reduced
his appraisal of the damage to $99,432. The record reflects that Reed's testimony regarding the value of
the taking was based on his extensive knowledge of the pipeline industry and the two comparable sales. 

 In addition to Reed's testimony, the trial court also received testimony from John Kalmbach
on the issue of damages. Kalmbach testified that Seminole acquired an exclusive easement that interfered
with appellants' rights to market pipeline "lanes" within the fifty-foot wide easement to other pipeline
companies and that they could have marketed an additional eight "lanes" within the easement but for the
serpentine meanderings of this pipeline. Based on these facts, Kalmbach testified that the value of the taking
was $469,000.

 Appellee's expert, Larry Kokel testified that the highest and best use for the property that
had been taken was its use in conjunction with the property on either side of the easement as pasture land. 
His appraisal of the compensation due appellants for the decrease in value of the permanent easement area
was $1170.

 It is obvious from the jury's verdict that the jury did not agree entirely with the valuation
testimony of Kalmbach or of his expert witness, Reed. On the other hand the jury's verdict of $66,288
is well within the range of the expert testimony, i.e., a low-end estimate of $1700 and a high-end estimate
of over $400,000. Furthermore, the jury's damage award is only two-thirds of the reduced damage
appraisal, $99,432, that Reed testified to on cross-examination. 

 In condemnation cases, the jury may select from the testimony on the question of value and
set the value at any amount between the highest and lowest expressed by the experts. Central Power &
Light Co. v. Martinez, 493 S.W.2d 903, 908 (Tex. Civ. App.--Corpus Christi 1973, no writ); Hester
v. State, 497 S.W.2d 501, 505 (Tex. Civ. App.--El Paso 1973, writ ref'd n.r.e.). It is within the
exclusive province of the jury to judge the credibility of the witnesses and to determine the weight to be
given to their testimony. Johnson v. Buck, 540 S.W.2d 393 (Tex. Civ. App.--Corpus Christi 1976, writ
ref'd n.r.e.). After reviewing the entire record, we hold that there is ample evidence of probative value to
support the jury's findings. Accordingly, we sustain appellants' first point of error. 

 Because we have concluded that the record contains sufficient evidence to support the
jury's verdict on Special Issue Number 1, we need not consider appellants' arguments regarding the
excluded comparable sales testimony. Accordingly, the judgment of the trial court is reversed and rendered
that the Kalmbachs recover $66,288 for the decrease in market value of the permanent easement
occasioned by the taking by Seminole. The remainder of the trial court's judgment is affirmed.



 

 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Jones and Kidd; Chief Justice Carroll not participating

Affirmed in Part; Reversed and Rendered in Part

Filed: March 26, 1998

Do Not Publish



t wide and sixteen and one-half feet long is a standard increment within
established pipeline corridors and that the standard price for that increment is $450. Appellants offered into
evidence twelve conveyances of pipeline easements. However, the trial court excluded ten of the sales for
various reasons. Reed's appraisal was based on the market value of pipeline easements, using the two
comparable sales that were admitted into evidence. T