# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00575-CV

### Frank L. Connolly, Appellant

### v.

### Neal Smith; Pye, Dobbs & Berry, P.C.; David Dobbs as Representative of the Estate of J. Robert Dobbs, Jr.; and John Berry, Appellees

### FROM THE DISTRICT COURT OF CALDWELL COUNTY, 274TH JUDICIAL DISTRICT NO. 00-O-444-A, HONORABLE C. FRED SHANNON, JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Frank L. Connolly challenges the trial court's grant of appellees' no-evidence summary judgment motion denying his lawsuit against his former attorney Neal Smith, his attorney's law firm Pye, Dobbs & Berry, P.C. (the law firm), named partner John Berry, and the representatives of the estate of named partner Robert Dobbs, Jr. (Dobbs). Connolly contends that he presented competent summary judgment evidence that appellees' negligence was a proximate cause of his damages and that the trial court erred by applying the statute of limitations to defeat his claims against appellees Dobbs and Berry individually. We will affirm the summary judgment as to Dobbs and Berry, but will reverse the summary judgment in favor of the law firm and Smith.

**FACTUAL AND PROCEDURAL BACKGROUND**

In the Spring of 1998, Connolly, who was 87 years old, decided to have some estate planning documents created and to buy some insurance products from Richard Yager. Richard Yager referred Connolly to Neal Smith, an attorney working for the firm of Pye, Dobbs & Berry, P.C.[1] Smith relied on a thirty-minute telephone interview with Connolly and information supplied by Yager to draft the estate planning documents, which were executed in May 1998.

In June 1999, Yager contacted Smith and requested that he assist in the creation of a limited liability corporation to be named Legacy Endeavors, L.L.C. Smith was told that Connolly, Yager, and Yager's wife planned to use the L.L.C. to invest money in the stock market and that the profits would be divided. Connolly would contribute the initial money and Yager and his wife would manage the funds and take a fifty-percent commission on all profits. Smith prepared and filed articles of organization for the L.L.C. as instructed by Yager. Smith did not consult with Connolly about the creation of the L.L.C. or its management. In a June 28, 1999 letter addressed to Yager, Smith reported that the articles had been filed and that Yager would be able to open a bank account for the L.L.C. as soon as he received a tax identification number. Connolly was not copied on the letter.

In February 2000, Yager took Connolly to meet with Smith. Connolly wanted Smith to amend his estate planning documents to include a variety of charitable donations. Smith testified in a deposition that they also discussed the ownership arrangement in the L.L.C. and that they needed

---

[1] Yager had referred approximately fifteen clients to the firm. The firm charged these clients a flat fee of $600 to prepare standard estate planning documents.

2

to "fix" it. Connolly does not recall discussing the L.L.C. with Smith, and no changes were ever made to the L.L.C.

On October 10, 2000, Smith sent another letter to Yager enclosing other organizational documents for the L.L.C., but explaining to Yager that the effect of the arrangement between Yager and Connolly "would be that Mr. Connolly was making large gifts" to Yager and his wife. Smith suggested in the letter that an investment agreement would be the best way to structure the business relationship between Yager and Connolly and enclosed a copy of an investment agreement. Smith did not send a copy of this letter to Connolly.

In the fall of 2000, Connolly became suspicious of Yager when he had difficulty getting Yager to withdraw money from the L.L.C.'s bank account. Connolly engaged a new attorney and soon discovered that several annuities that Yager had sold him had been surrendered. On October 30, 2000, Connolly's new attorney sent a series of letters revoking the power of attorney given to Yager. Connolly eventually determined that over $700,000 of his assets had been funneled through the L.L.C.'s bank account and could not be accounted for.

In 2001, Connolly filed a lawsuit against the Yagers, Smith, and the law firm; the suit included a malpractice claim against Smith and his law firm. He added the law partners in Smith's firm, Berry and Dobbs, as individual defendants on November 7, 2002. Defendants Smith, Berry, Dobbs, and the law firm filed a no-evidence motion for summary judgment contending that Connolly's claims against Dobbs and Berry were not filed within the two-year statute of limitations, and that Connolly had presented no evidence that Smith or the law firm's actions "were the proximate cause or producing cause of any of the Plaintiff's damages." Summary judgment was

3

granted by the trial court. The record reflects that this suit was then severed from the claims against the Yagers, making it a final judgment. This appeal followed.

## DISCUSSION

**Statute of Limitations**

Connolly first contends that the trial court erred by granting summary judgment in favor of Dobbs and Berry on statute of limitations grounds. Legal malpractice claims are governed by a two-year statute of limitations. *Apex Towing Co. v. Tolin*, 41 S.W.3d at 118, 120 (Tex. 2001). The limitations period generally begins to run when the cause of action accrues. *Id*. A cause of action accrues either at the time facts have come into existence that authorize a claimant to seek a judicial remedy or when the claimant discovers those facts or should have discovered them through the exercise of reasonable care and diligence. *Id*.; *Johnson & Higgins, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998); *Willis v. Maverick*, 760 S.W.2d 642, 644-46 (Tex. 1988).

The parties agree that the last day of the two-year statute of limitations was on October 30, 2002. Dobbs and Berry were not added to the lawsuit until November 7, 2002. Connolly contends, however, that Dobbs and Berry are the alter egos of the law firm Pye, Dobbs & Berry, P.C. and that the statute of limitations was tolled when suit was brought against the firm. *See Mathews Const. Co., Inc. v. Rosen*, 796 S.W.2d 692, 694 (Tex. 1990); *Gentry v. Credit Plan Corp.*, 528 S.W.2d 571, 575 (Tex. 1975).

We disregard the corporate entity under an alter ego theory when there exists such unity between a corporation and an individual that the corporation ceases to be separate and when

4

holding only the corporation liable would promote injustice. *See Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990). We consider the total dealings of the corporation and the individual to determine whether the "corporate entity is owned or controlled by an individual who operates the company in a manner that is indistinguishable from his personal affairs and in a manner calculated to mislead those dealing with him to their detriment." *Id*.; *Goldstein v. Mortenson*, 113 S.W.3d 769, 781 (Tex. App.—Austin 2003, no pet.).

Here, Connolly alleged only that the law firm was undercapitalized and underinsured. Otherwise, Dobbs and Berry were simply principals in a law firm organized as a professional corporation. Connolly presented no evidence that tended to show that Dobbs and Berry owned or controlled the law firm in a manner indistinguishable from their personal affairs or that Connolly was misled in any way regarding the structure of the law firm. *See id*. Once appellees established that Dobbs and Berry were added to the lawsuit after the expiration of the limitations period, Connolly was obligated to present summary judgment proof to establish a fact issue on his alter ego theory. *See Palmer v. Enserch Corp.*, 728 S.W.2d 431, 435 (Tex. App.—Austin 1987, writ ref'd n.r.e.). Because Connolly produced no such evidence, we affirm the summary judgment in favor of appellees Dobbs and Berry.

**Causation**

Summary judgment was granted in favor of all appellees on the grounds that there was no evidence presented to the trial court that appellees' negligence was the producing cause or

proximate cause of Connolly's damages.[2]  In general, a party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the nonmovant's claims on which it would have the burden of proof at trial.  *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.).  Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements.  Tex. R. Civ. P. 166a(i).  To raise a genuine issue of material fact, the nonmovant must set forth more than a scintilla of probative evidence as to an essential element of each claim on which the nonmovant would have the burden of proof at trial.  *See Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997); *Holmstrom*, 26 S.W.3d at 530.  When the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, more than a scintilla of evidence exists.  *Havner*, 953 S.W.2d at 711.

Connolly argues that the evidence he presented raised an issue of material fact as to causation.  Alternatively, he contends that appellees' motion for summary judgment was legally insufficient to support the trial court's summary judgment because it was pleaded in such a way as to limit the pleading to a theory that appellees' actions were the sole cause of Connolly's damages.

Connolly bases his alternative argument on the supreme court's opinion in *Lewis Construction, Inc. v. Harrison*, 70 S.W.3d 778, 784 (Tex. 2001).  This opinion makes a distinction between "a proximate cause" and "the proximate cause."  *See id*. ("the question here is whether an act by LLC was 'a' proximate cause, not 'the' proximate cause").  Connolly notes that appellees'

---

[2]  Appellees concede that Connolly presented sufficient evidence of negligence to avoid summary judgment on that issue.

6

motion for summary judgment asserted that appellees' actions were not "the proximate or producing cause of any of [Connolly's] damages." (Emphasis added.) He contends that the pleading's use of "the" precludes a summary judgment on the theory that appellees' actions were only "a" proximate or producing cause. *See McConnell v. Southside Ind. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993) (court may not uphold summary judgment on grounds not expressly set forth in motion). The discussion of "a" and "the" in *Harrison*, however, does not lead to Connolly's conclusion. The supreme court explained in its opinion that "more than one act may be the proximate cause of the same injury." *Id.* (emphasis added). Not only does the supreme court itself use "a" and "the" interchangeably in this context, but the very definition of "proximate cause" anticipates that more than one party's actions may have contributed to the damages. *See Harrison*, 70 S.W.3d at 784. We therefore reject Connolly's hyper-technical reading of appellees' pleadings.

In considering Connolly's contention that he raised a genuine issue of material fact as to causation, we review Connolly's evidence in the light most favorable to him and make every inference and resolve all doubts in his favor. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Holmstrom*, 26 S.W.3d at 530. The primary evidence supplied by Connolly in support of causation was the affidavit of Connolly himself and the supplementary affidavit of attorney Alvin J. Golden. Golden's affidavit details the arrangement between Yager and Connolly, describes Smith's contacts with the parties and the work he completed, and concludes that Smith was negligent in failing to advise Connolly with regard to the formation of the L.L.C. and the investment agreement. Golden then states:

7

Such negligence was a proximate cause of Mr. Connolly's damages in that it placed Mr. Yager in absolute control of all of Mr. Connolly's assets.

In my opinion, Mr. Smith's failure to perform his duties toward Mr. Connolly as discussed above was negligence and a proximate cause of the losses incurred through the L.L.C. . . . If Mr. Smith had performed his duty in advising Mr. Connolly in regard to the estate planning documents or the establishment of Legacy Endeavors, L.L.C., Mr. Connolly would have in all probability, based upon my experience, taken reasonable precautions to protect the assets from Mr. Yager's scheme and the losses incurred through the L.L.C. would thereby have been averted.

Connolly's affidavit also details his contact with Yager and Smith. He then discusses Smith's failure to advise him concerning the L.L.C.:

If Neal Smith had advised me that the effect of the L.L.C. as written was that I would be transferring my money to Richard and Sarah Yager, I would not have authorized him to create it or to file it and would have taken steps to prevent that and to protect my assets from the Yagers. I do not even know what an L.L.C. is. If Neal Smith had informed me that the L.L.C. could be used by the Yagers to transfer large amounts (over $700,000) of my cashed in annuity proceeds to Mr. Yager, and that Yager had all the checks and could control the account, I would not have permitted it.

Appellees discount both affidavits as conclusory. *See Burrow v. Arce*, 997 S.W.2d 229, 236 (Tex. 1999) (conclusory expert affidavit is incompetent summary judgment evidence); *Krishnan v. Law Offices of Henrichson*, 83 S.W.3d 295, 299 (Tex. App.—Corpus Christi 2002, pet. denied) (affidavit based on subjective belief is conclusory).

Although Golden gave a detailed and well supported opinion on the negligence issue, his affidavit lacks any basis for his conclusion that Connolly would have acted differently had he been advised of the consequences of his financial arrangements with Yager. As in *Burrows*, Golden relies only on his "personal experience" to inform his opinion of what Connolly would have done.

8

His affidavit is therefore conclusory and amounts to no evidence at all. *See Burrows*, 997 S.W.2d at 236. Connolly's affidavit on the other hand clearly states that, if Smith had advised him regarding the effect of the L.L.C., he would not have authorized its creation. This is not Connolly's subjective belief of the motivations of another, but a statement of what Connolly personally would have done if Smith had competently advised him. *See Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997) (self serving affidavit stating what that person would have done is competent summary judgment evidence). Furthermore, to the extent that Connolly did not discuss the specific steps he would have taken to prevent Yager from taking his money, Smith himself explained in his letter to Yager that an investment agreement would have accomplished the goals of the business relationship without vesting in Richard and Sarah Yager majority control of the L.L.C. and ownership of Connolly's assets.

The evidence presented by Connolly showing that he would have acted differently had he been competently advised by Smith, coupled with Smith's own advice to Yager suggesting the use of an investment agreement, creates a genuine issue of material fact as to whether Smith's negligence was a proximate cause of Connolly's losses. We therefore reverse the summary judgment in favor of Smith and the law firm and remand for further proceedings.

**CONCLUSION**

Because Connolly failed to raise a genuine issue of material fact in support of his alter ego theory, he has provided no evidence of an exception to the statute of limitations, and we affirm the summary judgment in favor of Dobbs and Berry. Because Connolly did provide some evidence

9

that Smith's negligence caused Connolly's losses, we reverse the summary judgment in favor of Smith and the law firm and remand for further proceedings.

_____

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed in Part; Reversed and Remanded in Part

Filed: July 15, 2004