NO. 07-09-0347-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JANUARY 8, 2010

______________________________

CHARLIE E. BECKHAM, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2003-402,627; HONORABLE CECIL PURYEAR, JUDGE

_______________________________

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.
MEMORANDUM OPINION
          Pursuant to a guilty plea in 2004, Appellant, Charlie E. Beckham, was placed on
deferred adjudication for aggravated assault. He was placed on community supervision
for two years. In 2006, pursuant to a guilty plea, Appellant was adjudicated guilty for
violations of the terms and conditions of community supervision and sentenced to five
years confinement, suspended in favor of five years community supervision. In January
2009, the State moved to revoke community supervision for multiple violations of the terms
and conditions thereof. Appellant entered a plea of not true to one of the State’s
allegations and true to the remaining allegations. The trial court revoked community
supervision and sentenced Appellant to five years confinement. 
          Pending before this Court is Appellant’s Motion to Dismiss Appeal in which he
represents he wishes to withdraw his notice of appeal and dismiss the appeal. As required
by Rule 42.2(a) of the Texas Rules of Appellate Procedure, the motion is signed by
Appellant and his attorney. No decision of this Court having been delivered, the motion
is granted and the appeal is dismissed. No motion for rehearing will be entertained and
our mandate will issue forthwith.
          Accordingly, the appeal is dismissed.
 
                                                                           Patrick A. Pirtle

                                                                                 Justice

Do not publish. 

ecific reading. However, the record
shows that Johnson introduced, without objection, two medical evaluation reports prepared
by Kurt in which it was specified that the carbon monoxide reading on October 30, 1998,
was 316 parts per million of carbon monoxide. Additionally, American did not request
redaction of those specific references. Moreover, American's expert, Dr. Eric Comstock
(Comstock), states in his report that it was reasonable to assume that Johnson was
exposed to approximately 300 parts per million of carbon monoxide in her workplace. In
view of this evidence, the admission of Johnson's testimony regarding the carbon monoxide
reading, even if erroneous, probably did not cause the rendition of an improper judgment
and was therefore harmless. American's second issue is overruled. 

 Returning to American's first issue, American argues Kurt's expert testimony was
unreliable and should have been excluded by the trial court because it was based upon
unreliable methodology or factual foundation. Specifically, it points out that Kurt's opinion
that Johnson was chronically exposed to carbon monoxide is not reasonable and lacks a
proper factual foundation because it was based upon a single reading. Further, American
argues that Kurt's methodology is not reliable because there is no scientifically accepted
theory that chronic exposure to carbon monoxide causes cardiomyopathy. In evaluating
these arguments, we will first look to the factual assumptions made by Kurt in forming his
opinion and then to the scientific reliability of his conclusion.

 A trial court's determination of the reliability of expert evidence is part of its
determination of admissibility and is not erroneous absent an abuse of discretion. See
Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 727 (Tex. 1998). The test for
determining whether the trial court abused its discretion is whether it acted without
reference to any guiding rules or principles. Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241-42 (Tex. 1985). When erroneously admitted evidence is merely
cumulative or does not concern a material issue dispositive of the case, the error is
harmless. Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 230 (Tex. 1990); Gee v. Liberty
Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989). Harmfulness is determined by
looking at the entire record to see whether the judgment was controlled by the testimony
that should have been excluded. Mancorp, Inc. v. Culpepper, 802 S.W.2d at 230; Gee v.
Liberty Mut. Fire Ins. Co., 765 S.W.2d at 396. 

 Reiterated, the thrust of American's challenge to Kurt's testimony is its argument 
that chronic exposure to carbon monoxide cannot be extrapolated from one reading and
his reliance upon that one reading makes his testimony unreliable. However, the record
reveals that Comstock, American's expert, specifically indicated that it is reasonable to
assume chronic exposure based on the one reading, and further, Kurt's assumption that
Johnson's carbon monoxide blood saturation was 30 percent could also be considered
reasonable. In Comstock's report, tendered by American, there appears the following
paragraph:

 Based upon the air monitoring of the patient's working environment in
October of 1998[,] it is reasonable to assume that she had been exposed to
carbon monoxide concentrations in the order of 300 ppm throughout the work
day for a period which has not been determined but appears to have been
a minimum of several months. Such a concentration of carbon monoxide in
the ambient air would result in significant hemogoblin saturation and I would
concur with the estimate of approximately 30% carboxyhemoglobin to be
expected.

Consequently, all of the expert testimony before the trial court supported the conclusion
that Johnson was chronically exposed to carbon monoxide and that her blood saturation
level was approximately 30 percent.

 American also challenges Kurt's opinion that Johnson's work-related exposure to
carbon monoxide caused her to develop cardiomyopathy. We note that Comstock opined
that even chronic exposure to carbon monoxide does not cause any clinical illnesses. 
However, that causation opinion is merely cumulative of other causation evidence in the
record. For example, although he indicates that Kurt's theory regarding chronic exposure
has not been accepted in the scientific community in the United States, he acknowledges
that the British scientific community believes that "chronic exposure to carbon monoxide
increases the incidence of heart problems . . . ."

 Moreover, because workers' compensation was involved, Johnson was sent to a
TWCC-designated doctor, Dr. Randall Wolcott. He opined in two separate reports that,
within a reasonable degree of medical probability, Johnson's work-related exposure to
carbon monoxide was a producing cause of her "heart disease." Indeed, in one of these
reports, which was introduced by American without any request to redact or exclude the
causation opinion, Wolcott stated:

 She [Johnson] has been seen by Dr. Rizzo who has diagnosed her with
cardiomyopathy. It is clear that carbon monoxide does cause significant
cellular destruction to myocardial cells. There is reasonable medical
probability that the carbon monoxide did contribute to the patient's heart
disease. 

 Thus, even assuming arguendo that the trial court was in error in admitting Kurt's
expert testimony, under this record, we cannot conclude that its admission probably caused
the rendition of an improper judgment. See Mancorp, Inc. v. Culpepper, 802 S.W.2d at
230. American's first issue is overruled.

 In summary, both of American's issues are overruled and the judgment of the trial
court is affirmed.

 John T. Boyd

 Senior Justice
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. 
Tex. Gov't Code Ann. 75.002(a)(1) (Vernon Supp. 2004-2005).