LEAIRD'S, INC., d/b/a Leaird's White Elephant and White Elephant Store, Appellant,

v.

WRANGLER, INC., Appellee.

No. 10–98–201–CV.

Court of Appeals of Texas, Waco.

Oct. 11, 2000.

Rehearing Overruled Oct. 11, 2000.

James R. Dunnam, John P. Mabry, Dunnam & Dunnam, L.L.P., Waco, for appellant.

Peter K. Rusek, John O'Herren, Elisa D. Rainey, Sheehy, Lovelace & Mayfield, P.C., Waco, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

REX D. DAVIS, Chief Justice.

Wrangler, Inc. filed suit on a sworn account against Leaird's, Inc., dba Leaird's White Elephant and White Elephant Store. Leaird's denied Wrangler's allegations and filed a counterclaim alleging among other things breach of contract. A jury found in Wrangler's favor on the sworn account and failed to find any breach of contract by Wrangler. The court rendered judgment in accordance with the verdict.

Leaird's claims in two issues that the court erred by admitting in evidence: (1) the testimony of a bank officer and a memorandum prepared by that witness because Wrangler failed to identify him in pretrial discovery as an expert witness; and (2) a Small Business Administration ("SBA") loan file pertaining to disaster-relief loan applications Leaird's had submitted to the SBA because Wrangler failed to produce a copy of the file to Leaird's in response to Leaird's request for production of statements under former Rule of Civil Procedure 166b(2)(g).

## BACKGROUND

Leaird's had been a family-owned business in downtown Gatesville since 1898. Originally, Leaird's sold general merchandise, but over the years the business evolved until in the 1980's Leaird's operated a clothing store and a furniture store.

Leaird's sold primarily Wrangler western wear in the clothing store. Jeb McClellan was Leaird's president during the pertinent time period. His brother Clay also participated in the operation of the business.

The evidence at trial focused on Leaird's relationship with Wrangler from 1989 until 1995 when Leaird's eliminated the western wear part of the business. Carl Brown, a retired credit department supervisor for Wrangler, testified about the status of the Leaird's account during the pertinent time period. Leaird's began falling farther and farther behind on payments. As a result, Wrangler began placing credit holds on Leaird's orders until payments were received. When a payment was received, Wrangler would ship merchandise to Leaird's corresponding to the amount by which Leaird's had reduced its arrearages.

In May 1994, Wrangler reduced Leaird's credit line from $101,000 to $75,000 because of the arrearages. Wrangler reduced the credit line to $1 in July, effectively halting further shipment of goods until payments were received from Leaird's. Wrangler ultimately refused to ship any further merchandise to Leaird's after it failed to bring its account current. Wrangler sent its last shipment on December 29, 1994. Leaird's made four payments in 1995 totaling $380.15. After these payments, Leaird's still owed Wrangler $25,211 .24, which is the amount Wrangler sought to recover in the instant suit.

## EXPERT TESTIMONY

Leaird's contends in its first issue that the court abused its discretion by allowing Eugene Worthington, Leaird's own banker, to provide expert testimony in Wrangler's behalf and by allowing Wrangler to introduce a memorandum drafted by Worthington because Wrangler failed to designate him before trial as an expert witness.

Wrangler responds that, with respect to admission of the memo, Leaird's failed to

preserve its complaint for appellate review because it failed to reurge its objection when Wrangler later questioned Jeb McClellan about Worthington's memo. Wrangler argues in the alternative that any error in the admission of the memo was rendered harmless because the trial court admitted similar evidence from other witnesses without objection; because the court should have granted Wrangler's motion for summary judgment on Leaird's counterclaims; and because the memo went only to the issue of Leaird's damages, which the jury did not reach.

### PERTINENT FACTS

Worthington was Executive Vice President of the National Bank of Gatesville, Leaird's primary lender. Worthington was in charge of the bank's lending department. Wrangler did not identify Worthington in discovery as an expert witness, although Leaird's did list him as such.

Wrangler asked Worthington for his opinion about how Leaird's had performed "over the last eight years." The trial court sustained Leaird's objection that the question sought an expert opinion. Wrangler then asked him how Leaird's performed in "the '90 to '94 time frame." Leaird's raised the same objection, but the trial court overruled the objection this time. Worthington responded that the furniture store and the clothing store had each experienced good years and bad years during this period.

After Worthington testified extensively concerning Leaird's loan history with the bank, Wrangler asked him about a typewritten document identified as Plaintiff's Exhibit 55. Worthington described this document as "a memo out of the Leaird's loan file dated June 16th of '96" which he had prepared. Leaird's objected that the memo contains expert opinion and Wrangler had not designated Worthington as an expert. The trial court responded that "most of it is factual it seems to me." Leaird's repeated the objection with reference to one sentence in particular, viz,

"Mismanagement and bad financial management continued to plague them." The court overruled the objection.

Worthington then read the entirety of the memo to the jury, including the sentence to which Leaird's particularly objected. Counsel for Wrangler repeated the objected-to sentence and asked, "Was that your conclusion?" Worthington responded affirmatively. Wrangler's counsel then asked Worthington whether he believed that "over the years Leaird's has had bad financial [management]." The trial court granted Leaird's a running objection to his testimony. Worthington responded:

I believe that you have to take action when you run a business. Sometimes they did not take action quick enough, or notice trends in their business. That, I would classify as bad management, yes, sir.

The remainder of Worthington's testimony focused on his conversations with the McClellans about their deteriorating relationship with Wrangler.

### PRESERVATION OF ERROR

■ To preserve an issue for appellate review, a party must make a timely, specific objection and obtain a ruling on that objection. TEX.R.APP.P. 33.1(a); *In re M.D.S.*, 1 S.W.3d 190, 202 (Tex.App.—Amarillo 1999, no pet.); *see also Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex.1991) (op. on reh'g) (applying former appellate rule 52(a)). A running objection can satisfy the Rule 33.1(a) requirement of a timely objection. *See Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 242–43 (Tex.App.—Corpus Christi 1994, writ denied); *Commerce, Crowdus & Canton, Ltd. v. DKS Constr., Inc.*, 776 S.W.2d 615, 620 (Tex.App.—Dallas 1989, no writ).

■ If a trial court permits a running objection as to a particular witness's testimony on a specific issue, the objecting party "may assume that the judge will make a similar ruling as to other offers of similar evidence and is not required to

repeat the objection." *Commerce, Crowdus & Canton,* 776 S.W.2d at 620; *City of Fort Worth v. Holland,* 748 S.W.2d 112, 113 (Tex.App.—Fort Worth 1988, writ denied); *accord Atkinson Gas,* 878 S.W.2d at 242; *Crispi v. Emmott,* 337 S.W.2d 314, 318 (Tex.Civ.App.—Houston 1960, no writ). However, the courts have generally limited application of this rule to those instances in which the similar evidence comes from the same witness. *See Atkinson Gas,* 878 S.W.2d at 243; *Commerce, Crowdus & Canton,* 776 S.W.2d at 620; *Holland,* 748 S.W.2d at 113.

■ Wrangler argues that Leaird's failed to preserve any error arising from the admission of Worthington's opinion testimony because it later questioned Jeb about this opinion without objection. Wrangler called Jeb as an adverse witness and questioned him extensively on reasons for Leaird's demise. The particular interrogation at issue occurred at the conclusion of his "direct" examination by counsel for Wrangler:

Q: But of course Mr. Worthington, the banker who had worked with you for as long as you can remember in this business, he said that mismanagement and bad financial management—I mean, that's you guys, right?

A: That's what that letter says.

Q: That's what Mr. Worthington says; isn't that right?

A: That's what he said. If that's his letter and it's there, I'm not—I haven't heard that, but I see it there on the deal.

■ In this instance, counsel for Wrangler put Worthington's opinion before the jury again in his question. However, unsworn statements of counsel generally do not constitute evidence. *See Banda v. Garcia,* 955 S.W.2d 270, 272 (Tex.1997) (per curiam). Although Jeb acknowledged Worthington's opinion, he did not endorse it. Accordingly, we conclude that counsel's two questions propounded to Jeb concerning Worthington's opinion do not amount to a failure by Leaird's to preserve error.

### Cumulative Evidence

■ Wrangler also suggests that any error in the admission of Worthington's opinion was rendered harmless because his opinion is cumulative of other testimony properly admitted in evidence. To obtain a reversal on the basis of improperly admitted testimony, an appellant must demonstrate that the admission of the complained-of evidence "probably caused the rendition of an improper judgment." Tex. R.App.P. 44.1(a)(1); *accord Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 230 (Tex. 1990); *Owens–Corning Fiberglas Corp. v. Malone,* 916 S.W.2d 551, 559 (Tex.App.—Houston [1st Dist.] 1996), *aff'd,* 972 S.W.2d 35 (Tex.1998). When the complained-of testimony is cumulative, then any error in its admission is harmless. *See Mancorp,* 802 S.W.2d at 230; *Owens–Corning Fiberglas,* 916 S.W.2d at 559.

Leaird's specific complaint concerns the admission of Worthington's opinion that "[m]ismanagement and bad financial management continued to plague [Leaird's]" during the pertinent time period. Jeb and Clay both testified that they made poor management decisions. In addition, an accountant called by Wrangler as an expert testified that Leaird's had too much inventory based on the level of sales it was experiencing. He also concluded that Leaird's maintained inaccurate financial records which contributed to the company's difficulties.

This evidence of poor management is similar to Worthington's opinion about which Leaird's complains. Because Worthington's opinion is cumulative of other evidence properly admitted, we conclude that any error arising from the admission of his testimony is harmless. *See Mancorp,* 802 S.W.2d at 230; *Owens–Corning Fiberglas,* 916 S.W.2d at 559. Accordingly, we overrule Leaird's first issue.

## SBA LOAN FILE

■ Leaird's argues in its second issue that the court erred by admitting in evidence an SBA loan file because it contains statements made by Jeb and Clay which were not disclosed before trial pursuant to Leaird's discovery request. Assuming without deciding that the loan file contains statements which Wrangler had a duty to disclose, Leaird's failed to properly preserve this issue for our review.

■ Leaird's posed a blanket objection to the admission of the SBA loan file on the basis that it contains statements not previously disclosed by Wrangler pursuant to Leaird's discovery request. However, only portions of the loan file are even arguably objectionable on this basis. Rule of Appellate Procedure 33.1(a)(1)(A) requires a specific objection to preserve error. *See* Tex.R.App.P. 33.1(a)(1)(A); *see also* Tex.R.Evid. 103(a)(1).

> A general objection to a unit of evidence as a whole, ... which does not point out specifically the portion objected to, is properly overruled if any part of it is admissible.

*Speier v. Webster College*, 616 S.W.2d 617, 619 (Tex.1981) (quoting *Brown & Root, Inc. v. Haddad*, 142 Tex. 624, 628, 180 S.W.2d 339, 341 (1944)); *accord Wolfe v. Wolfe*, 918 S.W.2d 533, 542 (Tex.App.—El Paso 1996, writ denied).

Because Leaird's failed to identify the specific portions of the SBA loan file which it deemed inadmissible and because the majority of the file is clearly not objectionable for the reason asserted, we conclude that Leaird's failed to properly preserve this issue for our review. *Id.* Accordingly, we overrule Leaird's second issue.

We affirm the judgment.

Justice VANCE dissenting.

BILL VANCE, Justice, dissenting.

I disagree with the majority's disposition of Leaird's first issue regarding the admission of the opinion of its banker, Worthington. I agree that the issue is properly before us, but I do not believe that the error was "rendered harmless" by the admission of "similar" evidence.

Testimony by Jeb McClellan and/or Clay McClellan that they "made poor management decisions" does not equate to a banker's opinion that "mismanagement and bad financial management continued to plague them." Testimony by Wrangler's expert to the effect that Leaird's "had too much inventory based on the level of sales it was experiencing" or that it "maintained inaccurate financial records" does not equate to Leaird's own banker's opinion about mismanagement or bad financial management.

I would hold that the court erred in admitting the opinion testimony, find that the error harmed Leaird's, reverse the judgment, and remand the cause for another trial.