In the Matter of Otha Henderson an Incapacitated Person
















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-00088-CV

IN THE MATTER OF THE GUARDIANSHIP
OF OTHA HENDERSON, AN INCAPACITATED PERSON

 

From the 87th District Court
Limestone County, Texas
Trial Court # 26,276-B
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Marvaline Jones applied for the guardianship of the person and the estate of her father,
Otha Henderson. Another of Othaâs daughters, Mary McGowan, contested the application and
requested to be appointed the guardian of his person. After a jury trial, Mary was appointed
guardian of the person and Marvaline was appointed guardian of the estate. Marvaline appeals
the trial courtâs order appointing Mary as the guardian of the person of Otha Henderson. We
reverse and remand this issue to the trial court.
Â Â Â Â Â Â In her first issue on appeal, Marvaline contends the trial court erred in admitting an exhibit
over her objection containing a list of names and phone numbers Mary found by Othaâs bed
because the exhibit was unauthenticated and was hearsay. Marvaline also contends the error
was harmful because the omission of Maryâs name on the list was blamed on Marvaline and
gave tangible substance to Maryâs claim that Marvaline excluded Mary from seeing Otha.
Â Â Â Â Â Â The admission or exclusion of evidence is a matter within the trial courtâs discretion. City
of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1993). A trial court abuses its
discretion when it acts without regard for any guiding rule or principles. Owens Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1996). If error is found, we review the
entire record to determine if the error was harmful. McCraw v. Maris, 828 S.W.2d 756, 758
(Tex. 1992). We will not reverse a trial court for an erroneous evidentiary ruling unless the
error probably caused the rendition of an improper judgment. Owens Corning, 972 S.W.2d at
43; Leairdâs, Inc. v. Wrangler, Inc., 31 S.W.3d 688, 691 (Tex. App.âWaco 2000, pet.
denied). See also Tex. R. App. P. 44.1.
Â Â Â Â Â Â The requirement of authentication as a condition precedent to admissibility of evidence is
satisfied by evidence sufficient to support a finding that the matter in question is what it is
claimed to be. Tex. R. Evid. 901(a). The failure to authenticate a document renders it
inadmissible. See Wirtz v. Massachusetts Mut. Life Ins. Co., 898 S.W.2d 414, 423 (Tex.
App.âAmarillo 1995, no writ).
Â Â Â Â Â Â During her case-in-chief, Mary identified a list of names and corresponding phone
numbers she found by her fatherâs bedside. Prior to its introduction, the list was characterized
as a list of contacts in case of an emergency. At the top of the list was Marvalineâs name and
numbers, the name and number of Jean, another daughter of Otha Henderson, and the flower
shop which Jean and her son, Lew, ran and its number. At the bottom of the list was the
number for a dentist, a pharmacy, and Donnaâs Hair Shack. Mary specifically noted that her
name and number was not on the list.
Â Â Â Â Â Â There is no title on the document. Marvaline denied preparing the list. And on cross-examination, Mary admitted that the list was not in Marvalineâs handwriting. No witness ever
testified as to who prepared the list, the purpose for which it was prepared, or when it was
prepared. And it was not authenticated in any other manner. See Tex. R. Evid. 901 & 902. 
Thus, the trial court abused its discretion in admitting the list into evidence as an emergency
call list.
Â Â Â Â Â Â Was this error harmful? Yes, it was. It is clear, after reviewing the entire record, that
Mary repeatedly emphasized her feeling of exclusion to her mother and fatherâs affairs and to
uninterrupted visitation with her father after her motherâs death. And Mary blamed Marvaline
for that exclusion. The list was crucial to her theory of the case. The list was a tangible
centerpiece of Maryâs evidence of being intentionally excluded by Marvaline.
Â Â Â Â Â Â Mary also emphasized the list and her numberâs absence from it during argument to the
jury. She argued that this single exhibit was all that was necessary to show that Marvaline
should not be appointed guardian of Otha Hendersonâs person:
This, [list] alone, tells me Marvaline is not fit, is not qualified, is not suitable to take
care of Mr. Henderson. She doesnât even list her own sister for sitters to come and
tell her if something happens to her father. Mary is a non-entity, a non-entity in this
manâs life. Thatâs not true, and thatâs not what he would want.

Because the list was a key ingredient to Maryâs claim of exclusion by Marvaline, the trial
courtâs error in admitting it into evidence probably caused the rendition of an improper
judgment and was harmful. Marvalineâs first issue is sustained.
Â Â Â Â Â Â We find it unnecessary to review Marvalineâs remaining issues in this appeal.
Â Â Â Â Â Â Because we sustain Marvalineâs first issue, this cause is reversed and remanded to the trial
court for further proceedings consistent with this opinion.



Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â TOM GRAY
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Before Chief Justice Gray,
Â Â Â Â Â Â Justice Vance, and
Â Â Â Â Â Â Justice Reyna



Reversed and remanded
Opinion delivered and filed April 7, 2004
[CV06]



pan>Tex.
Crim. 561, 272 S.W.2d 517, 520 (1954); Davis
v. State, 840 S.W.2d 480, 487 (Tex. App.Tyler 1992, pet. refÂd); State ex rel. Sherrod v. Carey, 790
S.W.2d 705, 709 (Tex. App.ÂAmarillo 1990, orig. proceeding).Â  The only limitation imposed by the statute is
that the court appoint a Âcompetent attorneyÂ to serve.Â  Tex.
Code Crim. Proc. Ann. art. 2.07(a).Â 
However, the statute does not define that term.

Â Â Â Â Â Â Â Â Â  We
begin with the language of the statute.Â  Sanchez v. State, 138 S.W.3d 324, 325 (Tex. Crim. App. 2004).Â  We may use a dictionary to assist in this endeavor.Â  See id.
at 325-26; Searcy v. State, 115
S.W.3d 628, 631 (Tex. App.ÂWaco 2003, no pet.).Â  WebsterÂs
defines the term ÂcompetentÂ to mean Âlegally qualified or adequate.ÂÂ  Merriam-WebsterÂs
Collegiate Dictionary 234-35 (10th ed. 1993).

Â Â Â Â Â Â Â Â Â  Section
81.102 of the State Bar Act provides that only members of the State Bar may
practice law in this state, with some exceptions not applicable here. Â See Tex. Gov't Code Ann. Â§ 81.102 (Vernon 2005).Â  The State Bar Rules define a Âmember in good
standingÂ as Âa member of the State Bar who is not in default in payment of
dues and who is not under suspension from practice.ÂÂ  Tex.
State Bar R. art. I(6), reprinted
in Tex. Gov't Code Ann., tit.
2, subtit. G app (Vernon 2005).

Â Â Â Â Â Â Â Â Â  According
to the State Bar Rules, a member may practice law if he or she is not in
default of payment of membership fees or other authorized assessments and if he
or she has complied with the minimum continuing education requirements of the
State Bar Rules.Â  See Tex. State Bar R.
art. III, Â§Â§ 5, 8, art. XII, Â§ 8.

Shea does not contend that the attorney pro tem
had failed to comply with these requirements.Â 
Rather, Shea contends that the attorney was disqualified because of his
federal probation for misprision of a felony.Â 
However, Shea presented no evidence to the trial court regarding the
status of the attorney pro temÂs membership with the State Bar.Â  He argued only that the attorney should not
be allowed to prosecute the case because he was on federal probation.

Because Shea presented no evidence that the
attorney pro temÂs license had been suspended or that he was not otherwise a
Âmember in good standingÂ of the State Bar, we cannot say that the court abused
its discretion by overruling SheaÂs objection to the appointment of the
attorney pro tem in his case.Â  Thus, we
overrule his sixth issue.

Shea
Was Not Denied His Right To A Speedy Trial

Â Â Â Â Â Â Â Â Â  Shea
contends in his first issue that he was denied his constitutional right to a
speedy trial.Â  Because Shea did not
assert his speedy trial in a timely fashion and has not shown that his defense
was prejudiced by the delay, we will overrule this issue.

Â Â Â Â Â Â Â Â Â  We
balance four non-exclusive factors when considering a speedy trial claim: (1)
the length of the delay; (2) the reasons for the delay; (3) the timeliness of
the defendantÂs assertion of his right to a speedy trial; and (4) any prejudice
to the defendant caused by the delay.Â  Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192, 33 L. Ed. 2d 101 (1972); Shaw v. State, 117 S.W.3d 883, 888-89 (Tex. Crim. App. 2003).

Â Â Â Â Â Â Â Â Â  The
Supreme Court has described the first factor as Âa triggering mechanismÂ for
consideration of the remaining factors.Â  Barker, 407 U.S. at 530, 92 S. Ct. at 2192; Shaw,
117 S.W.3d at 889.Â  The State concedes
that the 42-month[1]
delay in SheaÂs case is presumptively prejudicial.Â  Accordingly, we consider the remaining
factors.

Â Â Â Â Â Â Â Â Â  SheaÂs
trial was delayed for several reasons.Â  He
was arrested on the charge in December 1998 and released on bond the same
day.Â  The indictment was presented in
February 1999.Â  Shea filed continuance
motions which were granted in May 1999 and November 1999.Â  The courtÂs docket sheet indicates that the
matter was called on a monthly basis beginning in March 1999 and that the first
time Shea announced ÂreadyÂ for trial was February 2000.Â  From April 2000 until the trial in June 2002,
SheaÂs case was passed on six occasions because other (presumably older) cases
were heard.

During the hearing on SheaÂs speedy trial claim,
the State cited an overcrowded docket and SheaÂs continuance motions in this
and a companion case as reasons for the delay.Â 
These are the same factors recited by the prosecution in Shaw.Â 
117 S.W.3d at 889.Â  And as the
Court of Criminal Appeals concluded in that case, we too conclude that SheaÂs
continuances account for only Âseveral monthsÂ of the 42-month delay.Â  Id. Â Conversely, Âa crowded court docket is not a
valid reason for delay.ÂÂ  Id. at 890.Â 
Thus, this factor Âweighs in favor of finding a violation of appellantÂs
right to a speedy trial.ÂÂ  Id.

Â Â Â Â Â Â Â Â Â  Shea
made his first and only speedy trial claim on the day of trial.Â  ÂIn view of the lengthy delay here, during
most of which appellant quietly acquiesced, this factor weighs very heavily
against finding a violation of his right to a speedy trial.ÂÂ  Id.

Â Â  Â Â Â Â Â Â  The right to a speedy trial was designed:
(1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and
concern of the defendant; and (3) to limit the possibility that the defense
will be impaired.Â  Barker, 407 U.S. at 532, 92 S. Ct. at 2193; Shaw,
117 S.W.3d at 890.Â  Of these, Âthe most
serious is the last, because the inability of a defendant adequately to prepare
his case skews the fairness of the entire system.ÂÂ  Id.

Â Â Â Â Â Â Â Â Â  Shea
concedes that the issue of oppressive pretrial incarceration does not apply
because he was on bond before trial.Â  He
notes that his motion to dismiss on speedy trial grounds alleges that the delay
has caused him Âundue anxiety, concern, and is oppressive to [him].ÂÂ  However, Shea presented no evidence at the
hearing on the motion to support this assertion.Â  Cf. Shaw,
117 S.W.3d at 890 (Âappellant offered no evidence to the trial court that the
delay had caused him any unusual anxiety or concern, i.e., any anxiety or concern beyond the level normally associated
with being charged with a felony sexual crimeÂ).

Â Â Â Â Â Â Â Â Â  Thus,
Shea focuses on the third interest that the right to a speedy trial was
designed to protectÂlimiting the possibility that the defense will be
impaired.Â  Barker, 407 U.S. at 532, 92 S. Ct. at 2193; Shaw,
117 S.W.3d at 890.Â  Shea contends that
his defense was impaired by the delay because his step-daughter had moved to
another state at the time of trial and was unavailable to testify.Â  At the speedy trial hearing, Shea offered no
evidence of what the content of his step-daughterÂs testimony would be, but he
contends in his brief, ÂAny reasonable person would conclude that [her]
testimony would have been extremely helpful to the trier of fact in determining
guilt or innocence in this case.Â

Â Â Â Â Â Â Â Â Â  To
establish prejudice because of an unavailable witness, a defendant must show
that Âthe witness[ ] [is] unavailable,
that [her] testimony might be material and relevant to his case, and that he
has exercised due diligence in his attempt to find [her] and produce [her] for
trial.ÂÂ  Meyer v. State, 27 S.W.3d 644, 650 (Tex. App.ÂWaco 2000, pet.
refÂd) (quoting Harris v. State, 489
S.W.2d 303, 308 (Tex. Crim. App. 1973)); accord
Ervin v. State, 125 S.W.3d 542, 548 (Tex. App.ÂHouston [1st Dist.] 2002, no pet.).Â  SheaÂs unsubstantiated assertion that his
step-daughterÂs testimony Âwould have been extremely helpfulÂ does not satisfy
this test.Â  See Harris, 489 S.W.2d at 308-09; Ervin, 125 S.W.3d at 548-59; Meyer,
27 S.W.3d at 650.Â  Accordingly, this
factor weighs against a finding of a speedy trial violation.

Â Â Â Â Â Â Â Â Â  The
42-month delay and the reasons for the delay weigh in favor of a finding that
SheaÂs right to a speedy trial was denied.Â 
Conversely, SheaÂs delay in asserting his right to a speedy trial and
the lack of evidence that he was prejudiced by the delay weigh against such a
finding. Â Under these circumstances, we
cannot say that SheaÂ right to a speedy trial was violated by the delay.Â  Accordingly, we overrule SheaÂs first issue.

The
Trial Court Did Not Abuse Its Discretion By Failing To Give A Limiting

Instruction Because The Acts Which
The Parties Consider To Be

Â ÂExtraneousÂ Were Not So Under The Indictment

Â 

Â Â Â Â Â Â Â Â Â  Shea
contends in his second issue that the court abused its discretion by failing to
provide a limiting instruction when the State offered evidence of what the
parties consider to be extraneous offenses.[2]Â  However, because each of the purported
ÂextraneousÂ acts could have been prosecuted under the indictment, they were
not extraneous, and no limiting instruction was required.

Â Â Â Â Â Â Â Â Â  ÂAn
extraneous offense is defined as any act of misconduct, whether resulting in
prosecution or not, that is not shown in
the charging papers.ÂÂ  Rankin v. State, 953 S.W.2d 740, 741
(Tex. Crim. App. 1996); Brown v. State,
6 S.W.3d 571, 575 n.2 (Tex. App.ÂTyler 1999, pet. refÂd); accord Rodriguez v. State, 104 S.W.3d 87, 91 (Tex. Crim. App. 2003).Â  Â Â[T]he
Âon or aboutÂ language of an indictment allows the State to prove a date other
than the one alleged in the indictment as long as the date is anterior to the
presentment of the indictment and within the statutory limitation period.ÂÂ  Sledge
v. State, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997); accord Rodriguez, 104 S.W.3d at 91.

Here, the indictment alleges that Shea committed
the offense of indecency with a child Âon or aboutÂ June 10, 1998, Âby touching the genitals and/or breastÂ of
the complainant.Â  The ÂextraneousÂ acts
in question were two prior occasions when Shea touched the complainantÂs
breast, both of which occurred in 1996.

Â Â Â Â Â Â Â Â Â  The
statute of limitations for indecency with a child runs for ten years after the
childÂs 18th birthday.Â  See Tex.
Code Crim. Proc. Ann. art. 12.01(5)(A) (Vernon 2005).Â  Both of the supposed ÂextraneousÂ acts
occurred before the presentment of SheaÂs indictment and within the statutory
limitations period.Â  Therefore, they are
not ÂextraneousÂ offenses.[3]Â  See
Rodriguez, 104 S.W.3d at 91; Sledge,
953 S.W.2d at 255-56; Rankin, 953
S.W.2d at 741; Brown, 6 S.W.3d at
575-76.Â  Accordingly, no limiting
instruction was required when the evidence was admitted.Â  Thus, we overrule SheaÂs second issue.

The Complainant Adequately
Authenticated SheaÂs

E-mail Communications

Â 

Â Â Â Â Â Â Â Â Â  Shea
contends in his third issue that the court abused its discretion by admitting printed
copies of a series of e-mail communications purportedly from Shea to the
complainant because the e-mails were not properly authenticated.

Â Â Â Â Â Â Â Â Â  We
review a trial courtÂs evidentiary rulings under an abuse-of-discretion
standard.Â  Sauceda v. State, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).Â  The issue of authentication Âarises whenever
the relevancy of any evidence depends upon its identity, source, or connection
with a particular person, place, thing, or event.ÂÂ  Kephart
v. State, 875 S.W.2d 319, 321 (Tex. Crim. App. 1994) (per curiam) (quoting
2 Steven Goode et al., Guide to the Texas Rules of Evidence Â§ 901.1 (2d ed. 1993)), overruled on other grounds,
Angleton v. State, 971 S.W.2d 65, 69 (Tex. Crim. App. 1998).

Â Â Â Â Â Â Â Â Â  Rule
of Evidence 901(b) provides several illustrations of how authentication can be
established.Â  Authentication may be
established by testimony from a witness with knowledge that the document is
what it is claimed to be.Â  Tex. R. Evid. 901(b)(1); Wood v. State, 18 S.W.3d 642, 647 (Tex. Crim. App. 2000); Guidry v. State, 121 S.W.3d 849, 851-52 (Tex. App.ÂBeaumont 2003, no pet.).Â  Authentication may also be established by
Â[a]ppearance, contents, substance, internal patterns, or other distinctive
characteristics, taken in conjunction with circumstances.ÂÂ  Tex.
R. Evid. 901(b)(4); Wood, 18
S.W.3d at 647; Massimo v. State, 144
S.W.3d 210, 215 (Tex. App.ÂFort Worth 2004, no pet.).

Â Â Â Â Â Â Â Â Â  The
complainant testified that she was familiar with SheaÂs e-mail address and that
she had received the six e-mails in question from Shea.Â  Thus, her testimony authenticates the
e-mails.Â  See Tex. R. Evid. 901(b)(1);
Wood, 18 S.W.3d at 647; Guidry, 121 S.W.3d at 851-52.

Â Â Â Â Â Â Â Â Â  The
Fort Worth court has recently addressed the authentication
of e-mail communications in terms of the distinctive characteristics of such communications.Â  In Massimo,
that court relied on a federal decision to enumerate several characteristics to
consider when determining whether an e-mail has been properly
authenticated.Â  Massimo, 144 S.W.3d at 215-16 (citing U.S. v. Siddiqui, 235 F.3d 1318, 1322-23 (11th Cir. 2000)).Â  Those characteristics include: Â(1)
consistency with the e-mail address on another e-mail sent by the defendant;
(2) the authorÂs awareness through the e-mail of the details of defendantÂs
conduct; (3) the e-mailÂs inclusion of similar requests that the defendant had
made by phone during the time period; and (4) the e-mailÂs reference to the
author by the defendantÂs nickname.ÂÂ  Id.

Â Â Â Â Â Â Â Â Â  The
six e-mails in question have several of these characteristics.Â  They were sent to the complainant from two
different e-mail addresses.Â  The
complainant testified that she came to know SheaÂs e-mail address because he
would call to confirm that she had received an e-mail from him.Â  The first three e-mails bore this
address.Â  In the fourth e-mail, Shea
asked the complainant to no longer use the former address but to use the new
address from which he had sent the fourth e-mail.Â  The latter three e-mails bore this new
address.Â  In addition, Shea himself
offered in evidence eight e-mails from the complainant to him at this new
address.

Â Â Â Â Â Â Â Â Â  Two
of the e-mails offered by the State make reference to SheaÂs occupation as a
furniture maker.Â  In one of the e-mails,
Shea commented that he liked the complainantÂs locker number.Â  She explained in her testimony that this
comment was significant because her locker number had the numerals Â22Â in it
and Shea is twenty-two years older than she.

The complainant testified that the content of
the e-mails was similar to conversations she had had with Shea over the
telephone.Â  Four of the e-mails were
signed ÂKev.Â

For these reasons, the court did not abuse its
discretion by admitting the e-mails over SheaÂs objection to lack of
authentication.Â  See Massimo, 144 S.W.3d at 216-17.Â 
Accordingly, we overrule SheaÂs third point.

Misdemeanor Assault By Offensive
Or Provocative 

Contact Is Not A Lesser-Included
Offense

Of Indecency With A Child

Â 

Â Â Â Â Â Â Â Â Â  Shea
contends in his fourth issue that the court erred by failing to charge the jury
on misdemeanor assault by offensive or provocative contact as a lesser-included
offense of indecency with a child.Â 
Because these offenses have distinctive elements, we disagree.

Â Â Â Â Â Â Â Â Â  A
jury charge on a lesser-included offense is required if (1) the lesser-included
offense is included within the proof necessary to establish the offense
charged; and (2) some evidence exists in the record that if the defendant is
guilty, he is guilty of only the lesser offense.Â  Hampton v.
State, 109 S.W.3d 437, 440 (Tex. Crim. App. 2003).Â  Article 37.09 defines when a lesser offense
is included within the proof necessary to establish the offense charged.Â  See
Tex. Code Crim. Proc. Ann. art.
37.09 (Vernon 1981).

Â Â Â Â Â Â Â Â Â  As
pertinent to this case, article 37.09 provides that an offense is a
lesser-included offense if: 

Â·Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Âit is
established by proof of the same or less than all the facts required to
establish the commission of the offense charged;Â or

Â 

Â·Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Âit differs
from the offense charged only in the respect that a less culpable mental state
suffices to establish its commission.Â 

Â 

Tex. Code Crim. Proc.
Ann. art. 37.09(1), (3).

Shea contends that assault by offensive or
provocative touching meets the latter definition of a lesser-included offense
because Âthe culpability of the mental state of assault [is] less than that of
indecency with a child.ÂÂ  Although this
may be true in terms of moral or social culpability, it is not a true statement
insofar as the legal definitions of these offenses are concerned.

As Shea also observes in his brief, ÂThe mental
states required of the two crimes differ.ÂÂ 
It is the differences in the requisite elements which lead to the
conclusion that assault by offensive or provocative contact is not a
lesser-included offense of indecency with a child by contact.

Under the statute applicable to SheaÂs case, a
person commits the offense of indecency with a child by engaging in Âsexual
contactÂ with the child. Â See Act of May 29, 1993, Act of May 29, 1993, 73d Leg., R.S., ch. 900, Â§ 1.01, sec.
21.11(a)(1), 1993 Tex. Gen. Laws 3586, 3616 (amended 2001) (current version at Tex. Pen. Code Ann. Â§ 21.11(a)(1)
(Vernon 2003)).Â Â  The former statute
defined the term Âsexual contactÂ to be any proscribed touching done Âwith the
intent to arouse or gratify the sexual desire of any person.ÂÂ  Id., sec. 21.01(2), 1993 Tex. Gen. Laws 3586, 3615
(amended 2001) (current version at Tex.
Pen. Code Ann. Â§ 21.11(c) (Vernon 2003)).

Conversely, the offense of assault by offensive
or provocative contact is committed when a person Âknows or should reasonably
believe that the other will regard the contact as offensive or
provocative.ÂÂ  Tex. Pen. Code Ann. Â§ 22.01(a)(3) (Vernon 2003).

The indecency charge required the State to prove
that Shea acted with intent to arouse or gratify the sexual desire of some
person, not that he knew or should have reasonably believed that the
complainant would regard his touching as offensive or provocative.Â  Even though the same evidence may be
probative of both elements, they are distinctive elements.Â  See
Ramos v. State, 981 S.W.2d 700, 701 (Tex. App.ÂHouston [1st Dist.] 1998, no
pet.); accord Stafford v.
State, No. 02-02-00477-CR, 2003
Tex. App. LEXIS 10439, at *7-8 (Tex. App.ÂFort Worth
Dec. 11, 2003, pet. refÂd) (mem. op.).

The proof required to establish assault by
offensive or provocative contact is different, not less, than that required to
prove indecency with a child by contact.Â 
Thus, the misdemeanor assault charge is not a lesser-included
offense.Â  See Tex. Code Crim. Proc.
Ann. art. 37.09(1); Ramos, 981
S.W.2d at 701; see also Stafford, 2003 Tex. App. LEXIS 10439, at *7-8.Â  Accordingly, we overrule SheaÂs fourth issue.

The Prosecutor Did Not Comment On
SheaÂs Failure

To Testify During The Punishment
Argument

Â 

Â Â Â Â Â Â Â Â Â  Shea
contends in his fifth issue that the prosecutor impermissibly commented on his
failure to testify by mentioning SheaÂs absence from the courtroom during the
punishment argument.Â  Because the
prosecutor did not comment on SheaÂs failure to testify, we disagree.

It is well settled that a prosecutorÂs comment
amounts to a comment on a defendantÂs failure to testify only if the prosecutor
manifestly intends the comment to be, or the comment is of such character that
a typical jury would naturally and necessarily take it to be, a comment on the
defendantÂs failure to testify. Â It is
not sufficient that the comment might be construed as an implied or indirect
allusion to the defendantÂs failure to testify.

Â 

Wead v.
State, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004).Â  Because a defendantÂs Fifth Amendment
privilege against self-incrimination continues during the punishment phase of
trial, this prohibition applies to both the guilt-innocence and the punishment
phases.Â  See Mitchell v. U.S., 526 U.S. 314, 325-27, 119 S. Ct. 1307, 1313-14, 143 L. Ed. 2d 424 (1999); Carroll v. State, 42 S.W.3d 129, 131-32 (Tex. Crim. App. 2001).

Â Â Â Â Â Â Â Â Â  During
jury deliberations at the conclusion of the guilt-innocence phase, Shea left
the premises of the courthouse without telling anyone.Â  After the jury returned the guilty verdict,
the court conducted a hearing outside the juryÂs presence to determine whether
Shea had voluntarily absented himself from the proceedings.Â  See
Tex. Code Crim. Proc. Ann. art. 33.03
(Vernon 1989).Â 
The prosecutor elicited testimony from SheaÂs girlfriend that Shea and
she had come to court together that morning in her car, that Shea had a set of
keys to her car, and that her car was no longer in the parking lot.Â  The court found that Shea had voluntarily
absented himself from the proceedings.

Â Â Â Â Â Â Â Â Â  The
punishment phase proceeded that afternoon with the State calling a records
custodian and a fingerprint expert to prove-up SheaÂs prior convictions.Â  The next morning SheaÂs counsel made an oral
motion in limine asking that the prosecutor be instructed to approach the bench
before making any reference to SheaÂs absence from the proceedings.Â  The court denied this request.

Â Â Â Â Â Â Â Â Â  During
punishment argument, the prosecutor made the following statement:

Â Â Â Â Â Â Â Â Â  We
donÂt like everything about all of our legal system.Â  We shouldnÂt.Â 
We tug and pull against it, and that is healthy, but you respect it
enough to come up and show up each day.Â 
There is not enough respect here to show up for you.Â  There is not enough respect here to show up,
to show up for you to finish your work.

Â 

Â Â Â Â Â Â Â Â Â  This
statement is not Âof such character that a typical jury would naturally and
necessarily take it to be, a comment on the defendantÂs failure to testify. Â See Wead,
129 S.W.3d at 130.Â  Rather, it is a
comment on the defendantÂs failure to return for the punishment hearing.Â  At most, it Âmight be construed as an implied
or indirect allusion to the defendantÂs failure to testify.ÂÂ  Id.Â  Thus, it
does not constitute an impermissible comment on SheaÂs failure to testify.Â  Accordingly, we overrule SheaÂs fifth issue.

The judgment is affirmed.

Â 

FELIPE REYNA

Justice

Before Chief Justice Gray,

Justice Vance, and

Justice Reyna

Affirmed

Opinion delivered and filed April
 20, 2005

Publish

[CRPM]











Â Â Â  [1]Â Â Â Â Â Â Â Â Â Â  The
State characterizes the delay as only 40 months, beginning with the date of the
indictment.Â  However, the initial date
for speedy trial purposes is the date of arrest or indictment, whichever occurs
first.Â  See Shaw v. State, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003).Â  Thus, we measure the length of the delay from
the time of SheaÂs arrest, which was 2 months before the indictment was
presented.





Â Â Â  [2]Â Â Â Â Â Â Â Â Â Â  The
fact that the prosecutor agreed with SheaÂs characterization of the acts in
question as ÂextraneousÂ did not transform the actual character of these
acts.Â  See Sledge v. State, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997).





Â Â Â  [3]Â Â Â Â Â Â Â Â Â Â  Presiding
Judge Sharon Keller of the Court of Criminal Appeals provides an excellent
discussion of the interplay between TexasÂs Âon or aboutÂ jurisprudence and the rules
regarding extraneous offenses in her concurring opinion in Campbell v. State.Â  149 S.W.3d
149, 156-57 (Tex. Crim. App. 2004) (Keller, P.J., concurring).