ACCEPTED
03-15-00447-CV
8313153
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/18/2015 6:44:25 PM
JEFFREY D. KYLE
CLERK

# No. 03-15-00447-CV

IN THE THIRD COURT OF APPEALS
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

12/18/2015 6:44:25 PM

JEFFREY D. KYLE
Clerk

Austin Capital Collision, LLC,

Appellant,

v.

Barbara Pampalone,

Appellee/Cross-Appellant,

v.

Eric Hinojosa, Individually
Cross-Appellee.

On Appeal from D-1-GN-14-003207, in the 419th Judicial District Court, Travis County
Honorable Todd Wong, Presiding

## CROSS-APPELLEE ERIC HINOJOSA'S BRIEF

LAW OFFICE OF MICHAEL S. TRUESDALE, PLLC
Michael S. Truesdale
State Bar No. 00791825
801 West Avenue, Suite 201
Austin, TX 78701
512-482-8671
866-847-8719 (fax)
mike@truesdalelaw.com
COUNSEL FOR CROSS-APPELLEE ERIC HINOJOSA

ORAL ARGUMENT NOT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| **Appellant** | **Austin Capital Collision, LLC** |
| **Cross-Appellee** | **Eric Hinojosa** |
| Trial Counsel for Appellant and Cross-Appellee | SLATER PUGH LTD., LLP<br>Adam Pugh<br>apugh@slaterpugh.com<br>SBN 24044341<br>8400 N. Mopac Expressway, Suite 100<br>Austin, TX 78759<br>512-474-2431<br>512-472-0432 (fax) |
| Appellate counsel for Appellant and Cross-Appellee | LAW OFFICE OF MICHAEL S. TRUESDALE, PLLC<br>Michael S. Truesdale<br>mike@truesdalelaw.com<br>SBN 00791825<br>801 West Avenue, Suite 201<br>Austin, TX 78701<br>512-482-8671<br>866-847-8719 (fax) |
| **Appellee/Cross-Appellant** | **Barbara Pampalone** |
| Appellee's/Cross-Appellant's Counsel | MCGINNISS LOCHRIDGE, LLP<br>Joe Lea<br>jlea@mcginnislaw.com<br>SBN12080200<br>Nelia J. Robbi<br>nrobbi@mcginnislaw.com<br>SBN 24052296<br>600 Congress Avenue, Suite 2100<br>Austin, TX 78701<br>512-485-6065<br>512-495-6093 (fax) |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................ i

TABLE OF CONTENTS ................................................................................. ii

INDEX OF AUTHORITIES .......................................................................... iii

STATEMENT REGARDING ORAL ARGUMENT .............................................. iv

ISSUES PRESENTED .................................................................................. v

INTRODUCTION ......................................................................................... 1

STATEMENT OF FACTS ............................................................................. 2

SUMMARY OF ARGUMENT ........................................................................ 6

ARGUMENTS AND AUTHORITIES .............................................................. 7

I.     Standard of Review ......................................................................... 7

II.    The failure of Pampalone's claim against ACC defeats as a matter of law any piercing of the corporate veil claim against Hinojosa ..................... 8

III.   The record below supports the trial court's rejection of the "piercing" claim ................................................................................ 9

    A.    Elements of an "alter ego" claim ......................................... 10

    B.    The trial court's rejection of the "piercing" claim is consistent with the evidentiary record ..................................... 11

        1.    The record supports the trial court's factual finding that Pampalone's evidence was insufficient to support an alter ego claim ............................................................... 11

        2.    The record lacks conclusive evidence that would establishing as a matter of law other elements of the alter ego claim .......................................................... 12

            a.    The trial court made no factual finding regarding unity between Hinojosa and the corporation ................. 13

            b.    The record does not conclusively establish that the absence of an alter ego finding would operate an injustice ................................................................ 14

CONCLUSION ............................................................................................ 16

PRAYER FOR RELIEF ............................................................................... 16

CERTIFICATE OF SERVICE ....................................................................... 18

CERTIFICATE OF COMPLIANCE ................................................................ 18

# INDEX OF AUTHORITIES

**Cases**

*Cappuccitti v. Gulf Industrial Products, Inc.*,
    222 S.W.3d 468 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ................. 15

*Chesser v. Lifecare Mat. Servs.*,
    356 S.W.3d 613 (Tex. App.—Fort Worth 2011, no pet.) .............................. 8

*City of Keller v. Wilson*,
    168 S.W.3d 802  (Tex. 2005) ................................................................. 11, 12

*Mancorp., Inc. v. Culpepper*,
    802 S.W.2d 226 (Tex. 1990) .................................................................. 10, 15

*Stewart & Stevenson Services, Inc. v. Serv-Tech, Inc.*,
    879 S.W.2d 89 (Tex. App.—Houston [14th Dist.] 1994,
    writ denied) ................................................................................................ 10

**Statutes**

TEX. BUS. ORG. CODE §21.223(b) ............................................................................ 10
TEX. BUS. ORG. CODE. § 21.223(b) ........................................................................... 8

**Rules**

Tex. R. App. p. 38.1(e) ........................................................................................... iv

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 38.1(e), Cross-Appellee Eric Hinojosa submits that oral argument will not assist this Court with the resolution of this appeal. The theories raised on appeal are straight-forward, the disposition of which will not be materially aided by oral argument. However, if this Court grants Appellant's request and sets this matter for submission by oral argument, Hinojosa reserves his right to participate.

# ISSUES PRESENTED

1.  Barbara Pampalone's claims against Austin Capital Collision (ACC) are unenforceable pursuant to the statute of frauds grounds identified in ACC's briefing on appeal. Accordingly, the trial court could commit no error in refusing to pierce the corporate veil to hold Eric Hinojosa individually liable on claims that are unenforceable against the corporation itself.

2.  The trial court did not err in declining to pierce the corporate veil in light of the pleadings and evidentiary record relevant to the elements of that claim:

    *   Pampalone cannot assert, for the first time on appeal, grounds for imposing alter ego liability based upon theories of fraudulent transfer or actual fraud because she did not plead such claims and there is no argument that such claims were tried by consent. As the showing of fraud is a necessary element of an alter ego claim involving a breach of contract, her pleading deficiency waived her alter ego claim.

    *   The trial court's determination as fact-finder that insufficient evidence had been presented to warrant findings on the fraud elements of the alter ego claim is subject to deference and is fatal to the alter ego claim.

    *   The trial court's failure to make factual findings on other elements of the alter ego claim must be respected because those elements are not conclusively established by the record.

    *   The record contains no evidence, nor does it conclusively establish, that in the absence of an alter ego finding, an injustice will operate as to Pampalone in the event the judgment against ACC is affirmed on appeal.

3.  As ACC has posted supersedeas in an agreed amount, and as Pampalone has presented no evidence or argument that ACC could not satisfy the balance of any judgment (if a judgment against it is affirmed on appeal), any alleged error in declining to impose alter ego liability on Hinojosa is, by definition, harmless.

TO THE HONORABLE COURT OF APPEALS:

Eric Hinojosa files this Brief of Appellee, and in support states as follows:

**INTRODUCTION**

Barbara Pampalone sued Austin Capital Collision, LLC (ACC), seeking to hold it liable for a purported unwritten loan made to other entities over a decade ago, and she prevailed. CR 50. ACC superseded that judgment and has appealed, arguing that any alleged loan cannot be enforced against it, *inter alia*, given the statute of frauds. SCR 71.

Pampalone also sued ACC's primary shareholder (Eric Hinojosa) in his individual capacity, but as to her claims against him, she did not prevail. CR 8, 52. Her claims against him did not allege any actual fraud or fraudulent transfers, CR 8, and in any event the trial court found Pampalone presented inadequate evidence to justify piercing the corporate veil based on the pleadings. 2RR 253.

Thus, though Pampalone (1) has a <u>superseded</u> judgment against ACC, (2) failed to plead or prove a theory for holding Hinojosa individually liable on a contract claim against ACC, and (3) neither alleged nor presented evidence showing any injustice will result absent an alter ego finding, she brings this cross-appeal challenging the trial court's refusal to pierce the corporate veil.

In the most practical sense, this appeal is totally unnecessary. Pampalone cannot recover twice – once from ACC and then again from Hinojosa – for the

1

same judgment. If Pampalone prevails in ACC's appeal challenging the judgment against it, she can enforce the judgment against the supersedeas bond posted by ACC, and there has never been any argument or evidence presented indicating ACC would lack the means to satisfy any amounts that may remain owed such that she would be exposed to an excess judgment. But if ACC prevails in its appeal, the piercing question as to Hinojosa will be rendered moot because in the absence of an obligation enforceable against the corporation, there will be no obligation to enforce against its shareholder. Either way, neither outcome gives rise to any need to disturb the trial court's refusal to hold Hinojosa individually liable, and this Court should affirm the judgment in his favor.

## STATEMENT OF FACTS

Hinojosa adopts the statement of facts contained in ACC's Brief. He also contests the other points contained in Pampalone's statement. As ACC's briefing makes clear, the obligations Pampalone initially seeks to enforce against ACC were never reduced to a writing and thus cannot be enforced against ACC or anyone else, consistent with the statute of frauds. At most, Pampalone gives passing reference to the fact that the underlying "obligation" was not in writing, but that fact is fatal to the claim against ACC directly, and by extension, any allegation seeking to enforce that claim against Hinojosa.

Pampalone also takes liberties concerning the "wind up" period for the HABP entities and in suggesting that Hinojosa left Pampalone "with presumably no one to sue." Pampalone's Brief at 4. The record citations do not bear out any such argument concerning wind-up periods, and the cited findings of fact 29-31, CR 57-58, have nothing to do with stripping Pampalone of "anyone to sue". Indeed, she did sue, and obtained a judgment against, ACC. CR 8, 53. And while the findings of fact note that she made a loan to the "owners of the Capital Collision business which, at the time, were the HABP Entities as general partner of Capital Collision, GP," CR 54-55. While she sued one of the owners of the HABO Entities – Eric Hinojosa, she elected not to sue the other 50% owner, who happened to be her son Erik Pampalone.[1] Instead, while Hinojosa was left with over $200,000 of debts after Pampalone's son went his separate way, 2RR 23, she chose only to sue Hinojosa and ACC, and not all "owners of the Capital Collision" to whom the loan was purportedly made.

---

[1] Pampalone suggests her son approached her as "vice president of Capital Collision," Brief at 6, when in fact, Capital Collision, GP was a partnership, and the only entities for which her son served as vice president were the Texas and Nevada corporations that served as partners. It has never been clear to whom Pampalone purportedly made any loan – to Capital Collision, GP, to its owners (the HABP Entities) or to the owners of those entities (Erik Pampalone and Eric Hinojosa) – hence the importance of having a loan agreement reduced to writing. Yet the trial court found the loan was effectively to "the HABP Entities as general partner of Capital Collision, GP." Those entities were undisputedly owned both by Eric Hinojosa and Eric Pampalone but she only sued Hinojosa personally and not her son.

3

Next, Pampalone devotes six pages of her brief to arguments under heading "The Fraud". *See* Pampalone's Brief at 8-13. But her pleadings never urged any fraud theories, either conventional fraud or theories of fraudulent transfer under the Texas Fraudulent Conveyance Act, Texas Business & Commerce Code, § 24.006. She asserted two causes of action – a breach of contract claim against ACC, CR 6-7, and a claim for "Breach of Contract against Eric Hinojosa – Piercing the Corporate Veil", CR 7-8. Nowhere in those allegations did she allege any intent to deceive anyone by Hinojosa or any use by Hinojosa of any entity to accomplish such as result. *See* CR 6-8: Her allegations against Hinojosa were as follows:

30. Plaintiff seeks to pierce the corporate veil because Defendant Austin Capital Collision, LLLC was organized and operated as a mere tool or business conduit of Defendant Hinojosa.

31. At all material times hereto, Defendant Hinojosa, as the sole managing member of Defendant Austin Capital Collision had a financial interest in Defendant Austin Capital Collision, LLC. Further, there was such unity between the defendants that the separateness of Defendant Austin Capital Collision, LLC had ceased. Finally, holding only Defendant Austin Capital Collision, LLC liable would result in an injustice.

32. Plaintiff hereby brings a cause of action for breach of contract, as alleged in paragraphs 23-27 against Defendant Hinojosa pursuant to the terms of the Loan for the unpaid principal plus accrued interest lawfully owed plus any other amount necessary to compensate plaintiff for all detriment proximately caused by Defendants' breach.

CR 7-8, ¶¶ 30-32.

4

In short, no type of fraud has ever been a part of this case – neither actual fraud, constructive fraud, or statutory fraud. At its core, this case is nothing more than a breach of contract case with a statute of frauds wrinkle– whether an unwritten loan agreement dating back over a decade existed between Pampalone and the owners of a prior entity, whether any such unwritten agreement can be enforceable given the statute of frauds, and whether ACC can be held to have assumed any such unwritten agreement in the absence of any writing showing as much. And what should be a dispositive question in this appeal is whether, despite no evidence indicating that ACC cannot satisfy the judgment rendered against it, and despite the filing of a bond in an agreed amount to supersede the judgment, some injustice will befall Pampalone if the judgment is not separately held to be enforceable against Hinojosa individually.[2] From a factual standpoint, the record is devoid of evidence that would support any finding that an injustice would result from the refusal to disregard the corporate form and hold Hinojosa personally liable for a judgment against ACC.

---

[2] Not only do Pampalone's pleadings fail to assert the fraud elements necessary to pierce the corporate veil in connection with a claim involving a breach of contract (elements Pampalone's pleadings recognize as being required, *see* Brief at 19), the trial record is devoid of <u>any mention of fraud whatsoever </u>other than when defense counsel notes during argument that no claim for fraudulent transfer had been pled, 2RR 46-47, and when the trial court found insufficient evidence to warrant any finding of an attempt to defraud, 2RR 253.

## SUMMARY OF ARGUMENT

The trial court's judgment declining to hold Eric Hinojosa should be affirmed on appeal for the following reasons.

First, to the extent judgment should not have been rendered against ACC for breach of contract, there is no obligation that could give rise to an alter ego claim against Hinojosa in his individual capacity. The failure of the claim against ACC for breach of an obligation renders moot any associated attempt to pierce the corporate veil and hold Hinojosa personally liable for an asserted obligation that is unenforceable against the corporation.

Second, neither the pleadings nor the evidentiary record support a ruling piercing the corporate veil as to Hinojosa, particularly when the claim involves one for breach of contract. The alter ego claim asserted by Pampalone's petition was inadequate as a matter of law because it failed to make any fraud allegation, *see* CR 6-8, and only raised elements of fraud for the first time on appeal. And in any event, the trial court determined that the evidence failed to warrant findings on the fraud elements of an alter ego claim against Hinojosa when the asserted obligation against ACC arose from an alleged breach of contract. Its determinations in that regard are subject to deference on appeal.

Moreover, as to the alter ego claim as pleaded by Pampalone, the evidence does not conclusively establish the other elements of the piercing claim that were

6

neither expressly discussed by the court in its ruling nor incorporated into any findings of fact. As but one example, the trial court made no findings that the fact that the absence of an alter ego finding would operate an injustice on Pampalone. But the fact that ACC has deposited funds as supersedeas to satisfy the judgment against it, and as Pampalone has offered no evidence or argument that any remaining portion of the judgment cannot otherwise be satisfied by ACC, there is no basis whatsoever to conclude that the failure to pierce the veil and hold Hinojosa liable for the judgment against ACC will "operate an injustice" against Pampalone in the event she prevails on appeal. In short, no legal factual, or practical justification exists for imposing alter ego liability on Hinojosa on the record below.

## ARGUMENTS AND AUTHORITIES

### I.      Standard of Review

Judge Wong explained the factual finding on which he declined to hold Eric Hinojosa individually liable:

> I did not find Erik [sic] Hinojosa liable individually based on the pleadings which were trying to pierce the corporate veil because I don't believe there was evidence presented which would warrant that finding in attempting to defraud others by using the entity to do so.

2RR 253. Thus, his articulated basis for declining to pierce the corporate veil was his factual finding on elements of a piercing claim that must be proven when a dispute involves an alleged breach of contract by a corporation – that insufficient

evidence had been offered to cause him to find for Pampalone on the fraud elements of the piercing the corporate veil claim.[3] *See Chesser v. Lifecare Mat. Servs.*, 356 S.W.3d 613, 614 (Tex. App.—Fort Worth 2011, no pet.).

Given those statements in his ruling, and given the contents of the trial court's findings of fact and conclusions of law, CR 53-63, Pampalone assumed the burden to establish that the record conclusively established the fraud elements of a contract-based piercing claim (which went unasserted in any event) contrary to Judge Wong's factual findings. And as to other elements of the alter ego claim on which no findings were made, she had the burden to establish that the record conclusively established them, a high burden indeed.

## II.     The failure of Pampalone's claim against ACC defeats as a matter of law any piercing of the corporate veil claim against Hinojosa

Pampalone's alter-ego claim against Hinojosa assumes she has an enforceable claim against ACC in the first instance. *See* CR 6. But the failure of a claim against the <u>corporation</u> moots the need to consider any <u>alter ego</u> claim. Thus, to the extent any judgment against ACC fails, so too must any piercing claim asserted against Hinojosa seeking to hold him individually liability for such judgment.

---

[3] Again, it bears noting that Pampalone's pleading made no allegations either of a fraudulent transfer or any actual fraud, CR 6-8, even though in her appellate briefing she concedes that such elements are necessary to impose alter ego liability when a claim involves an alleged breach of contract claim asserted against a corporation. *See* Brief at 19 (citing TEX. BUS. ORG. CODE. § 21.223(b)).

ACC's opening brief demonstrated why the claim for breach of contract against it could not be enforced given the statute of frauds – that any underlying loan obligation to "owners" of separate underlying entities (presumably, the owners of the Texas and Nevada "Hinojosa Auto Body & Paint" corporations that owned Capital Collision, GP) was not in writing and not enforceable against them. ACC further demonstrated why, even if enforceable against Capital Collision, GP, any purported loan could not be enforced against ACC because ACC did not enter into any writing by which it assumed any obligation of Capital Collision, GP and why theories, such as partial performance, could not be invoked to enforce the judgment against it. *See generally* ACC's Brief at 3-9.

Hinojosa adopts those arguments and incorporates them herein. To the extent those arguments demonstrate why the judgment against ACC should be vacated as relying upon the existence of an unenforceable obligation, they also demonstrate why the "veil" should not be pierced. In the absence of an enforceable judgment against ACC, there can be no claim to enforce against Hinojosa as its alter ego.

### III. The record below supports the trial court's rejection of the "piercing" claim

As noted, the trial court rejected Pampalone's request to hold Hinojosa individually liable, concluding that she had failed to present evidence on several

9

essential elements of a piercing claim. 2RR 253. The record supports the trial court's factual findings, and thus, the resulting judgment as it relates to Hinojosa. Moreover, the record also fails to contain evidence that would conclusively establish other elements of an alter ego claim, evidence on which this Court would have to rely in order to disturb the judgment below as to Hinojosa.

## A. Elements of an "alter ego" claim

Pampalone notes five elements of an alter ego claim as recognized by the Supreme Court when a case involves a claim for breach of contract:

1. The defendant has a sufficient financial interest, ownership, or control of the corporation; *Stewart & Stevenson Services, Inc. v. Serv-Tech, Inc.*, 879 S.W.2d 89 (Tex. App.—Houston [14th Dist.] 1994, writ denied);

2. A sufficient unity exists between the individual and the corporation to demonstrate that the separateness of the corporation has ceased, *Mancorp., Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990);

3. An injustice would operate against a judgment creditor if only the corporation were liable (*i.e.*, the judgment could not be satisfied against the corporation), *id*.;

4. The individual caused the corporation to be used for purposes of perpetrating an actual fraud, TEX. BUS. ORG. CODE §21.223(b); and

5. The defendant perpetrated an actual fraud on the plaintiff primarily for the defendant's direct personal benefits, *id*.

*See* Pampalone Brief at 18-19.

**B.** **The trial court's rejection of the "piercing" claim is consistent with the evidentiary record**

When the trial court announced its judgment, it noted its factual determination that Pampalone failed to produce evidence sufficient to satisfy elements four and five above (relating to fraud). 2RR 253. And while the record supports those findings (on the record before it, a reasonable fact-finder could conclude that insufficient evidence had been offered to support the fraud findings), the record also supports the trial court's implicit rejection of the other elements of the alter ego claim as well. *See City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). The record certainly does not factually establish each element as a matter of law as would be required to disturb the trial court's judgment.

**1.** **The record supports the trial court's factual finding that Pampalone's evidence was insufficient to support an alter ego claim**

The record supports the trial court's announced reasons for rejecting the alter ego claim against Hinojosa –its finding that she failed to produce sufficient evidence to persuade it on the fraud elements of an alter ego claim. The trial court was the finder of fact. It heard all the testimony and reviewed all the exhibits. And it was the judge of the credibility of the witnesses. *City of Keller*, 168 S.W.3d at 819. Indeed, the court even recognized that it did not find Hinojosa "terribly believable." 2RR 252. And yet against that backdrop, the court still found that the evidence offered by Pampalone was insufficient to lead it to make findings against

Hinojosa on the fraud elements of the piercing claim – that Hinojosa used the entity in an attempt to defraud others. 2RR 253.

Pampalone spends several pages of briefing explaining her different take on the evidence. *See* Brief at 30-32. And whether a jury or a different fact-finder (or this Court for that matter) might view the evidence differently and make difference inferences from it, such a possibility misses the point. Despite its concededly hostile view of Hinojosa's credibility as a prepared witness, the court, as the fact-finder still concluded that Pampalone did not make a sufficient showing that Hinojosa used the entity in an attempt to defraud anyone. That finding is fatal to Pampalone's alter ego claim because it is not contradicted by conclusive evidence establishing an intent on Hinojosa's part and use of the entity to defraud. *City of Keller*, 168 S.W.3d at 819. Accordingly, the judgment declining to disregard the corporate form and hold Hinojosa liable as an alter ego must be affirmed.

### 2. The record lacks conclusive evidence that would establishing as a matter of law other elements of the alter ego claim

Independent of the court's articulated reason for rejecting the alter ego claim discussed above, the trial court did not make express findings of fact and conclusions of law as to other elements of the alter ego claim. Thus, to disturb the trial court's judgment, Pampalone must demonstrate that all other elements were established as a matter of law. The record does not support such an outcome.

### a. The trial court made no factual finding regarding unity between Hinojosa and the corporation

It is not factually disputed that Eric Hinojosa ultimately owns 99% of ACC. But that fact in and of itself is not remarkable. Individuals routinely create limited liability companies as vehicles for conducting business. Indeed, that is the very purpose for the existence of LLCs – to provide a mechanism for individuals to conduct business in a manner that limits their potential for individual liability.

What is important for the present purposes is that the trial court did not make any finding, and the record does not conclusively establish, that such a unity of interests existed as between Hinojosa and ACC that any meaningful distinction between the two ceased to exist.[4]

Pampalone argues that the fact that a sole shareholder of a corporation injects funds into the corporate account means that, as a matter of law, the distinction between the corporation and the individual is so blurred to justify disregarding the corporate form. But that cannot be the case. Whether a sole

---

[4]  Pampalone refers to lines of questioning at trial about Hinojosa's ownership of ACC as supporting inferences that the distinction between Hinojosa and ACC was non-existent. In response to questions about his ownership, Hinojosa was asked variations on the same question: "So the company was essentially [is basically] you?", to which he responded correct. 2RR 173, 173-74 (brackets reflect the text of the question when asked a second time). But contextually, those answers simply refer to the fact that he was the primary owner and shareholder of ACC. Again, it is not remarkable that an individual owns and operates a business through a LLC mechanism. Ownership does not in and of itself demonstrate a "blurring of distinctions" between Hinojosa and the corporation. Indeed, such a conclusion would utterly undermine the purpose served for creating LLCs in the first instance.

shareholder makes a contribution to an LLC cannot, as a matter of law, destroy the distinction between the individual and the LLC and defeat the limited liability that attaches to such a corporate form.  And in the absence of a factual finding, the record does not otherwise establish the "blurring" element as a matter of law..

### b. The record does not conclusively establish that the absence of an alter ego finding would operate an injustice

The most significant problem with Pampalone's alter ego claim arises under the third element of the claim because she made no showing that the refusal to pierce the corporate veil would operate an injustice as to Pampalone.  While Pampalone asserts the record supports an alter ego finding to prevent an injustice, that argument begs the question:  What injustice would be operated on Pampalone if the veil is not pierced?  The record does not establish as a matter of law that any injustice would occur.

Pampalone argues that the "old company" (presumably the "company" owned 50% by her son that she does not sue) no longer exists and thus cannot pay her back.  Pampalone Brief at 27.  But she is not attempting to pierce the corporate veil of the "old company."  Instead, she seeks to hold Hinojosa liable for purported obligations of ACC.  Notably, she cites to no evidence whatsoever showing that ACC would be incapable of satisfying a judgment against if, if any such judgment survives ACC's appeal.  In the absence of any evidence, Pampalone cannot argue that the "operates an injustice" element of the alter ego claim is established as a

14

matter of law. Indeed, the opposite is necessarily true, as there is an outright failure of evidence showing the prospects for any injustice that would result if the veil were not pierced and if the judgment were enforced exclusively against ACC.

In the absence of evidence of any injustice that would result if a judgment against ACC alone is allowed to stand, this Court has no basis to conclude that the injustice element of the alter ego claim is established as a matter of law, thus defeating Pampalone's alter ego claim. *Contrast Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 229 (Tex. 1990) (evidence provided the fact-finder with a reasonable basis to infer that judgment creditor might go unpaid by the corporation, thus resulting in an injustice); *Cappuccitti v. Gulf Industrial Products, Inc.*, 222 S.W.3d 468, 484 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (alter ego finding justified when sole shareholder's actions left company insolvent and incapable of paying creditor).

But we do not need to speculate whether, in the event Pampalone prevails in ACC's appeal, ACC would be capable of satisfying obligations imposed by the judgment against it. Pampalone's interests are protected by the fact that ACC posted supersedeas that can be turned to in satisfaction of the judgment if in fact she prevails in ACC's appeal. *See* SCR 47. Given the supersedeas deposit, and given the absence of any evidence or argument showing ACC will not otherwise be capable of satisfying the amount of any judgment in excess of the posted

15

supersedeas, it can hardly be said that Pampalone established, as a matter of law, that an alter ego finding is necessary to prevent the operation of an injustice.

## CONCLUSION

Pampalone's challenge to the trial court's refusal to hold Eric Hinojosa individually liable faces insurmountable obstacles and should be rejected. As there is no proper theory to hold ACC liable in the first instance, an alter ego claim against Hinojosa should fail as a matter of law. And even if a judgment against ACC survives appeal, the record does not contradict the trial court's factual finding that Pampalone presented insufficient evidence about the insufficiency of the evidence on key elements of the alter ego claim that would warrant a factual finding in her favor, elements that were not pleaded in any event. Most importantly, it simply cannot be said that the failure to disregard the corporate form and hold Hinojosa individually liable will operate an injustice against Pampalone when she never argued or offered proof on that issue and when any judgment against ACC is the subject of a supersedeas deposit.

## PRAYER FOR RELIEF

Eric Hinojosa respectfully prays that this Court affirm the judgment rendered in his favor declining to hold him personally liable for any corporate liabilities of ACC that may survive appeal or otherwise, that costs be taxes against Pampalone, and for whatever additional relief to which he may be entitled.

Respectfully submitted,

*/s/ Michael S. Truesdale*
Michael S. Truesdale

LAW OFFICE OF MICHAEL S. TRUESDALE, PLLC
State Bar No. 00791825
801 West Avenue, Suite 201
Austin, TX 78701
512-482-8671
866-847-8719 (fax)
mike@truesdalelaw.com
COUNSEL FOR APPELLANT

## CERTIFICATE OF SERVICE

On December 18, the undersigned certifies that he served a copy of this Brief of Appellee on the following in the manner listed below, in compliance with Texas Rules of Appellate Procedure 9.5 and 25.1(e):

McGinniss Lochridge
Joe Lea
jlea@mcginnislaw.com
SBN12080200
Nelia J. Robbi
nrobbi@mcginnislaw.com
SBN 24052296
600 Congress Avenue, Suite 2100
Austin, TX 78701
512-485-6065
512-495-6093 (fax)

*Counsel for Barbara Pampalone*
*Via e-service*

/s/ Michael S. Truesdale
Michael S. Truesdale
SBN 00791825

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the word limitation contained in Texas Rule of Appellate Procedure 9.4(i)(2)(E) in that the brief contains a total of 4,102 words, excluding parts of the brief exempted by Tex. R. App. P. 9.4(i)(1), as calculated by the word count tool of Microsoft Word (2008) for Mac.

/s/ Michael S. Truesdale
Michael S. Truesdale